UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>CUTTER FINANCIAL GROUP, LLC and<br>JEFFREY CUTTER,<br><br>Defendants. | Case No. 1:23-cv-10589 |

# JOINT STATEMENT AND PROPOSED PRETRIAL SCHEDULE

Pursuant to Fed. R. Civ. P. 26(f) and Local Rule 16.1, counsel for the plaintiff Securities and Exchange Commission (the "Commission") and counsel for defendants Cutter Financial Group, LLC and Jeffrey Cutter (the "Defendants") submit this Joint Statement and Proposed Pretrial Schedule.

## I.     Rule 26(f) Conference

Pursuant to Fed. R. Civ. P. 26(f) and Local Rule 16.1, counsel for the Commission and counsel for the Defendants conducted a Rule 26(f) conference on December 22, 2023 to discuss: (i) an agenda of matters to be discussed at the scheduling conference scheduled for January 16, 2024; (ii) a proposed pretrial schedule, including a discovery plan; (iii) whether they will consent to trial by magistrate judge; (iv) whether alternate dispute resolution would aid in resolving the litigation; and (v) settlement.

II.     **Statements of Position**

    A.     <u>Plaintiff</u>

Jeffrey Cutter and Cutter Financial Group, LLC ("CFG") are investment advisers in Falmouth, Massachusetts. As investment advisers, Cutter and CFG owed their investment advisory clients an affirmative duty of the utmost good faith, and they were required to make full and fair disclosure of all material facts and to employ reasonable care to avoid misleading their clients. Instead, from at least 2014 until 2021, Cutter schemed to elevate his own economic interests above those of his investment advisory clients, without making the necessary disclosures or obtaining his clients' informed consent to certain conflicts of interest. Unbeknownst to their clients, and in breach of his and CFG's fiduciary duties, Cutter was advising clients and doing business with an eye towards maximizing the money and services flowing to him and CFG. For example, Cutter steered his advisory clients to annuities over other investment options, while concealing the substantial, up-front commissions he received from the insurance companies for each annuity sale. In many cases, Cutter even moved clients out of annuities he had sold them only a few years earlier, into new annuities, to generate another round of inadequately disclosed commissions for himself and CFG. To effectuate this aspect of the scheme, Cutter made false statements to the insurance companies to justify the annuity switches. In other instances, Cutter advised clients to sell certain stocks, bonds and mutual fund holdings to fund the purchase of an annuity or invest in funds managed by a third party, without warning of the potentially serious tax implications of his advice.

The Commission alleges that Cutter and CFG have engaged in fraudulent or deceptive conduct with respect to investment advisory clients, in violation of Sections 206(1) and 206(2) of the Investment Advisers Act of 1940 ("Advisers Act") [15 U.S.C. §§80b-6(1), (2)], and that CFG, aided and abetted by Cutter, failed to maintain policies and procedures reasonably

designed to prevent such misconduct, in violation of Section 206(4) of the Advisers Act [15 U.S.C. §80b-6(4)] and Rule 206(4)-7 thereunder [17 C.F.R. § 275.206(4)-7].

The Commission seeks from the Defendants: (a) a permanent injunction prohibiting them from further violations of the relevant provisions of the federal securities laws; (b) disgorgement of their ill-gotten gains, plus prejudgment interest; and (c) civil penalties.

**B.**     **Defendants**

CFG and Mr. Cutter deny each and every SEC allegation of misconduct in the Amended Complaint.

CFG is a registered investment adviser ("RIA") based in Falmouth, Massachusetts, owned by Mr. Cutter and his wife. CFG was founded, and first began offering investment advice, in October 2017. Mr. Cutter is also licensed in Massachusetts and other states as an insurance agent, and he sells fixed indexed annuities ("FIAs"), which are insurance products, through a firm called Cutterinsure, Inc.

Whether advising clients about securities investments or selling FIAs to customers, Mr. Cutter has not placed his own economic self-interest above his clients' best interests. From its very outset as an RIA, CFG's Form ADV brochure disclosed to all clients that some firm personnel are separately licensed as insurance agents, sell insurance products, and receive commission-based sales compensation, and that as a result, a conflict of interest exists with the insurance sales business. These disclosures complied in all material respects with CFG's and Mr. Cutter's disclosure obligations under SEC regulations and guidance, as well as to industry standards. In addition, customers who purchased FIAs also received written disclosures about Mr. Cutter's commission compensation from the insurance companies who issued the products, and those disclosures conformed to all applicable legal requirements.

The FIAs that certain customers purchased are conservative insurance products that have performed well, and customers paid less compensation to Mr. Cutter for FIAs than they would have paid to CFG if the same assets were included in the securities portfolios for which CFG earned management fees. Customers who purchased replacement FIAs received FIAs that were more suitable for them than the ones that were replaced. Mr. Cutter also did not mislead any insurance companies to justify the replacement FIAs, and his customers had ample opportunity to read and understand the products that they purchased. Finally, Mr. Cutter did not fail to consider tax implications in any securities advice that he provided.

Accordingly, the SEC will be unable to satisfy its burden of proof that Mr. Cutter or CFG engaged in fraudulent or deceptive conduct with respect to investment advisory clients, in violation of Sections 206(1) and 206(2) of the Advisers Act or that CFG, failed to maintain policies and procedures reasonably designed to prevent such misconduct, in violation of Section 206(4) of the Advisers Act. In addition, many of the SEC's claims are barred by the statute of limitations and the McCarran-Ferguson Act. Finally, even if the SEC were to prevail on any of its legal theories, it is not entitled to injunctive relief, disgorgement, or civil penalties.

### III. Proposed Pretrial Schedule

The parties propose the following schedule for the completion of discovery:

| | |
|---|---|
| Initial disclosures exchanged | 1/12/24 |
| Last date for SEC to seek leave to amend complaint or add parties | 3/1/24 |
| SEC deadline to disclose to Defendants whether it will call any expert in its case in chief | 7/1/24 |
| Fact discovery closes | 7/31/24 |

4

| | |
|---|---|
| *If the SEC determines that it will call an expert in its case in chief:* | |
| SEC expert report due | 9/6/24 |
| Defendant expert report due | 10/4/24 |
| Close of expert discovery | 11/1/24 |
| *If the SEC determines that it will NOT seek to call an expert in its case in chief:* | |
| Defendant expert report due | 9/6/24 |
| SEC rebuttal expert report due | 10/4/24 |
| Close of expert discovery | 11/1/24 |
| Status conference with the Court | At a date after 11/1/24 at the Court's convenience |

The parties have discussed the likelihood of filing motions for summary judgment and agree that it is unclear if such motions will be appropriate. In light of the significant amount of time such motions would add to the overall schedule, the parties propose to defer decisions on deadlines for filing summary judgment motions, as well as deadlines for the pretrial memo, pretrial conference and trial ready date, until the close of discovery. The parties' goal is to get an earlier trial date in the event that neither party files a motion for summary judgment.

### IV. Limitations on Discovery

The Commission does not anticipate needing relief from the limitation on depositions, interrogatories, requests for admission, and requests for production of documents set forth in Local Rule 26.1(c). The Defendants do not anticipate needing relief from the limitation on interrogatories, requests for admission or requests for production set forth in Local Rule 26.1(c) but request permission to take up to 30 fact depositions. This request is based on the

5

representation by Commission counsel that the SEC Staff spoke with 20-30 witnesses during its investigation. The Commission objects to Defendants' proposal to take up to 30 fact depositions.

### V.     Phased Discovery

The parties do not believe phased discovery is necessary except to conduct expert discovery after fact discovery is completed.

### VI.    Trial by Magistrate Judge

The parties do not consent to the referral of the case to a Magistrate Judge for purposes of trial.

### VII.   Use of Alternative Dispute Resolution Programs

The Defendants are willing to engage in mediation to aid the parties in resolving this litigation. The Commission does not believe that mediation would aid the parties in resolving this litigation due to the fundamental differences of opinion between the parties regarding the appropriate resolution of the case. However, the Commission will continue to evaluate the value of mediation as discovery proceeds.

### VIII.  Local Rule 16.1(D)(3) Certification

The Commission, through its undersigned counsel, certifies that it is aware of the potential costs associated with the full course of this litigation, and that it is aware of the availability of alternative dispute resolution procedures. Counsel for the Defendants certify that

they have conferred with their clients with respect to: (a) establishing a budget for the costs of conducting the full course, and various alternative courses, of this litigation, and (b) the resolution of this litigation through the use of alternative dispute resolution programs such as those outlined in Local Rule 16.4.

Respectfully submitted,

/s/ Susan Cooke
Susan Cooke (D.C. Bar No. 978173)
   Senior Trial Counsel
Amy Burkart (Mass Bar No. 651828)
   Senior Trial Counsel

Attorneys for Plaintiff
**SECURITIES AND EXCHANGE COMMISSION**
Boston Regional Office
33 Arch Street
Boston, MA  02110
(617) 573-4538  (Cooke direct)
(617) 573-4590  (fax)
cookes@sec.gov  (Cooke email)


  /s/ Ian D. Roffman
Ian D. Roffman (BBO# 637564)
*iroffman@nutter.com*
Mark C. Jensen (BBO# 646662)
*mjensen@nutter.com*
Ashley M. Paquin (BBO# 696377)
*apaquin@nutter.com*
Nutter McClennen & Fish LLP
Seaport West
155 Seaport Blvd.
Boston, MA  02210-2604
(617) 439-2421 (Roffman)

Attorneys for Defendants
Cutter Financial Group LLC and Jeffrey Cutter

Dated:  January 3, 2024

## Certificate of Service

  I, Susan Cooke, certify that on January 3, 2024, the foregoing joint statement was filed electronically with the Court. The filing will be sent to the registered participants as identified on the Notice of Electronic Filing and may also be accessed through the Court's ECF system.

         /s/ Susan Cooke
         Susan R. Cooke