UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 1:23-cv-10589 |
| CUTTER FINANCIAL GROUP, LLC AND JEFFREY CUTTER, | ) ) ) | <u>Oral Argument Requested</u> |
| Defendants. | ) ) ) | |

**<u>MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANTS' MOTION TO COMPEL PLAINTIFF
TO ANSWER REQUEST FOR ADMISSION NO. 7
OR IN THE ALTERNATIVE, TO DEEM IT ADMITTED</u>**

Defendants' Request for Admission No. 7 ("RFA 7") seeks to resolve an important factual issue in this case: that Plaintiff U.S. Securities and Exchange Commission ("SEC") has never issued public written guidance of its position that investment advisers who are also licensed insurance agents must disclose the *amount* of their commissions on non-security fixed annuity products.

RFA 7 seeks an admission of a *fact* – the absence of specific written guidance on a central issue in the case. The SEC acknowledges that the fact is true. In its own words, "As we explained in our meet and confer, we cannot point you to specific guidance that refutes RFA 7 as you have constructed it." (Ex. A).[1] Yet the SEC still denies RFA 7 because it does not fit within the SEC's theory of its case. The Federal Rules require more: the SEC must be compelled to respond to RFA 7 as drafted or in this alternative, this Court should deem RFA 7 to be admitted.

---

[1] The SEC's Supplemental Response, which also includes the text of RFA 7 and the SEC's Initial Response, is attached as Exhibit A.

## Background

This is an SEC enforcement action against a registered investment adviser, Cutter Financial Group ("CFG"), and its owner, Jeff Cutter. CFG and Mr. Cutter offer managed securities accounts through CFG, and Mr. Cutter is also a licensed insurance agent who sells fixed indexed annuities, which are a non-security insurance product. A potential conflict of interest exists by offering both advisory fee-based services and selling commission-based products.

Defendants disclosed the existence of the potential conflict of interest to CFG clients, but the SEC's Amended Complaint alleges that Defendants were also specifically obligated to disclose the amount of Mr. Cutter's insurance commissions to their advisory clients who bought insurance products. Am. Cmplt. ¶ 37 (Dkt. 15) (Defendants "did not completely or accurately disclose to their investment advisory clients the commissions from the sale of annuities."). In its interrogatory answers, the SEC articulated its position about what information Defendants' duties allegedly required them to disclose:

> The 'numerous economic incentives' the Commission contends were not adequately disclosed…are: 1) the up-front, lump sum commissions Defendants received from the annuity companies for the sale of annuities…

Pl.'s Supp. Resp. and Obj. to Defs.' First Set of Interrogatories at 1-2. (Ex. B.)

Importantly, the SEC's claims are not "strict liability" claims; they require that the SEC show what a reasonable investment adviser would have understood its disclosure obligations to be at each relevant time. The First Claim requires proof of scienter under Section 206(1) or negligence under Section 206(2) of the Advisers Act. *SEC v. Cutter Fin. Grp., LLC*, No. 23-CV-10589-DJC, 2023 WL 8653927, at *6 (D. Mass. Dec. 14, 2023). The Second Claim, under Advisers Act Rule 206(4)-7, requires the fact finder to assess reasonableness when determining

whether Defendants "adopt[ed] and implement[ed] written policies and procedures *reasonably designed* to prevent violation of the Advisers Act." Am. Cmplt. ¶ 118 (italics added). The SEC also contends that the disclosure duty arose well back in time: all but one of the clients identified in the Amended Complaint purchased their first annuities from Mr. Cutter before 2016. (Am Cmplt., ¶¶ 49, 60, 74, 83, 94, 101, 103 (Clients A-G).)

Defendants are aware of *general* guidance issued by the SEC about disclosure of compensation from the sale of non-securities products: that registered investment advisors must make "simple and brief" disclosures of compensation for non-advisory services but are "**not required** to include the amount or range of the fees...." Amendments to Form ADV, Rel. No. IA-3060 at 17 (July 28, 2010), 75 Fed. Reg. 49234, 49238 (Aug. 12, 2010) (emphasis added). But Defendants believe the SEC has never issued guidance taking the *specific* position it takes in this enforcement action. Thus, Defendants propounded RFA 7, which seeks that the SEC has not issued guidance stating that the amount of an insurance commission must be disclosed, a fact that Defendants believe to be true:

> **Request for Admission No. 7**: The SEC has not issued any written guidance stating that an insurance agent who is also associated with a registered investment advisor must disclose the amount of his or her commission on the sale of a fixed indexed annuity.

Ex. A.

In its initial response, the SEC "denied" RFA 7 in a narrative response that referred only to general guidance about an investment advisor's duties but did not even include any of the key words, "insurance," "agent," "fixed," "annuity," or even "commission." After discussions between the parties, the SEC agreed to supplement its response.

Strikingly, the SEC's Supplemental Response similarly "denies" RFA 7, while simultaneous acknowledging that it has no *factual* basis for its denial. Rather, than admit the truth, the SEC makes legal arguments about other guidance that it believes "directly applies to the allegations in the complaint." But these legal arguments are beside the point on a Request for Admission. The Federal Rules do not permit a Plaintiff to evade a specific Request for Admission by making general statements about its legal arguments.

<div align="center">**Argument**</div>

**I.      RFA 7 Requests Information Relevant to the Parties' Claims and Defenses**

Defendants understand that the SEC's position in this lawsuit is that the Advisers Act's general fiduciary standard requires that a dually registered insurance agent and RIA should make the specific disclosures of the amount of their fixed indexed annuity commissions. The factual question presented by Defendants' RFA 7 is whether the SEC has ever *previously stated* that position or anything like it.

A request for admission may address anything within the scope of Rule 26(b)(1) – i.e., any nonprivileged matter relating to "facts, the application of law to fact, or opinions about either." Fed. R. Civ. P. 26(b)(1), 36(a)(1)(A). The Rules do not permit "evasive or incomplete" answers. *Campbell v. Isolation Techs., Inc.*, No. CV 04-40236-FDS, 2005 WL 8176501, at *2 (D. Mass. Oct. 19, 2005). The fact that a party "disagrees with the premise of a request for admission is not grounds for not answering." *AMAG Pharma., Inc. v. Am. Guarantee and Liab. Ins. Co.*, No. 21-cv-10618-LTS, 2022 WL 16950437, *10 (D. Mass. Nov. 15, 2022). This Court may deem requests for admission admitted if the requested party fails to properly answer. *Xiao Wei Catering Linkage in Inner Mongolia Co. v. Inner Mongolia Xiao Wei Yang USA, Inc.*, No. CV 15-10114-DJC, 2018 WL 1718630, at *3 (D. Mass. Apr. 9, 2018).

Defendants' RFA 7 seeks an admission about the SEC's prior statements concerning the very duties it claims Defendants violated, an issue relevant to the claims and defenses. Advisers Act Section 206(1) requires proof of scienter, that is, Defendants' subjective state of mind regarding these duties. *Cutter Fin. Grp., LLC*, 2023 WL 8653927, at *6. Section 206(2) and Rule 206(4)-7 are based on negligence: they require assessing what a reasonable person in Defendants' position would understand their duties to be. *Id.*; 17 CFR 275.206(4)-7. Because the fact finder will be asked to determine whether Defendants acted intentionally, recklessly, negligently – or reasonably – based on regulatory guidance that existed at the time of Defendants' conduct, the existence or non-existence of specific regulatory guidance on a central issue in this case is squarely relevant to the Defendants' state of mind.

In its initial and supplemental responses, the SEC does not deny that regulatory guidance is relevant. It simply wants to argue that the fact finder should disregard the absence of specific guidance in light of general guidance. But this is an *argument* not a *fact*.

The SEC's initial response did not mention insurance agents, fixed indexed annuities (or annuities of any kind) or, amazingly, commissions. It referred Defendants to the home page of the SEC's gargantuan website, implicitly suggesting that Defendants must sift through that haystack to find any needles the agency might have buried there. It referenced "educational outreach programs" without any indication of what subjects are covered or where any writings might be found. It included at least three categories of information completely unrelated to this case. Specifically, this case has nothing to do with "registration requirements for investment advisers," "educational outreach programs for investment companies [i.e., mutual funds]" or "resources for . . . investors." Even where the SEC attempted a more specific response, the quote from Chairman Clayton's 2019 speech deals only generically with the best interest standard –

something Defendants do not contest – but says nothing about specific disclosure requirements that may follow from that standard for any registered investment advisers, whether or not insurance licensed. It also says nothing about the state of SEC guidance circa 2014-2016, the period when the initial annuity sales to Clients A-G took place. Such a response does nothing to narrow issues for trial.

The SEC's supplemental response fares no better. Without expressly admitting RFA 7, the SEC begins by acknowledging that it "cannot point … to specific guidance that refutes RFA 7…." The SEC then argues that an investment adviser "owes a fiduciary duty to his clients," which is neither disputed nor addressed by RFA 7. Finally, the SEC creates a straw man by mischaracterizing Defendants' position on a different issue – disclosure of "the capacity in which the firm is acting" – and citing guidance about that other issue that says nothing about insurance agents.[2] The SEC's legal arguments about disclosure of "capacity" are simply unresponsive to a question about disclosure of the amount of insurance commissions.

One of the purposes of requests for admission is to narrow the issues for trial, and these standards apply with equal force to the SEC. *SEC v. Happ,* 392 F.3d 12, 33-34 (1st Cir. 2004) (affirming sanctions against the SEC for refusing to admit or stipulate to the absence of a phone call until midway through trial).

The SEC's desire to make legal arguments at a later stage of the case does not excuse its refusal to admit to a truthful fact at this stage of this case. RFA 7 does not raise any question of law. Defendants are not asking the SEC to interpret the Advisers Act or any regulation nor does

---

[2] The two passages quoted by the SEC make specific reference to dually registered broker-dealers and registered investment advisers, which unlike insurance agents are registered with and regulated by the SEC.  Moreover, the more expansive quotation was issued only in April 2023, *after* the SEC filed this action against Mr. Cutter and far too late to bear upon the Complaint's allegations about transactions occurring between 2014 and 2021.

it address the capacity in which Defendants were acting. Rather, Defendants are requesting that the SEC admit a fact about the absence of specific written regulatory guidance on a key issue.

## **Conclusion**

For these reasons, Defendants respectfully request that the Court order the SEC to answer RFA 7, or deem the request admitted for purposes of this case.

Date: October 28, 2024                    Respectfully submitted,

<div style="margin-left: 40%;">

*/s/ Ian D. Roffman*
Ian D. Roffman (Bar No. 637564)
iroffman@nutter.com
Mark C. Jensen (Bar No. 646662)
mjensen@nutter.com
Natalia E. Peña (BBO# 707596)
*npena@nutter.com*
Nutter McClennen & Fish LLP
155 Seaport Blvd., Seaport West
Boston, MA  02210-2604
(617) 439-2000

*Attorneys for Defendants*

</div>

## REQUEST FOR ORAL ARGUMENT

Pursuant to Local Rule 7.1(d), Defendants respectfully submit that oral argument will assist the Court and request a hearing on their motion to dismiss.

## LOCAL RULE 7.1 and 37.1 CERTIFICATION

I certify pursuant to Local Rule 7.1(a)(2) and 37.1(b) that counsel for Defendants, Ian Roffman and Natalia Peña met with counsel for Plaintiff, Amy Burkart and Susan Cooke on September 23, 2024 via videoconference for approximately one hour and attempted in good faith to resolve or narrow the above-described issue. Counsel for the parties also exchanged emails on October 18, 2024 in an attempt to resolve the issue.

_/s/ Ian D. Roffman_
Ian D. Roffman

## CERTIFICATE OF SERVICE

I certify that on October 28, 2024, this document (filed through the ECF system) will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants.

_/s/ Ian D. Roffman_
Ian D. Roffman

6909902