UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SECURITIES AND EXCHANGE COMISSION,<br><br>    Plaintiff,<br><br>        v.<br><br>CUTTER FINANCIAL GROUP, LLC AND JEFFREY CUTTER,<br><br>    Defendants. | No. 23-cv-10589-DJC |

**MEMORANDUM AND ORDER ON DEFENDANTS' MOTION TO COMPEL PLAINTIFF TO ANSWER REQUEST FOR ADMISSION**

CABELL, U.S.M.J.

The Securities and Exchange Commission ("SEC") has sued defendants Cutter Financial Group, LLC ("CFG") and its owner Jeffery Cutter ("Cutter") (collectively "defendants") for violations of the Investment Advisor Act, 15 U.S.C. §§ 80b et seq. Cutter, who is both a registered investment advisor and insurance agent, allegedly schemed to elevate his own economic interests above those of his investment advisory clients. The defendants move to compel the SEC to respond to request for admission number 7 ("RFA 7") or to deem the request admitted. (D. 80). For the reasons set forth below, the motion is denied.

I. **LEGAL STANDARD**

Federal Rule of Civil Procedure 36(a) allows a party to serve a request to admit "the truth of any matters within the scope of

Rule 26(b)(1) relating to" the "facts, the application of the law to the facts, or opinions about either." Fed. R. Civ. P. 36(a)(1). If the responding party does not admit a matter, "the answer must specifically deny it or state in detail why the answering party cannot truthfully admit or deny it." Fed. R. Civ. P. 36(a)(4). "A denial must fairly respond to the substance of the matter." *Id*.  A party may also qualify its answer but must do so in good faith.  Fed. R. Civ. P. 36(a)(4) ("[W]hen good faith requires that a party qualify an answer . . . the answer must specify the part admitted and qualify or deny the rest.").

## II.     BACKGROUND AND THE PARTIES' ARGUMENTS

RFA 7 seeks information about whether the SEC has issued written guidance regarding commissions received by registered investment advisors for selling fixed income annuities.  It asks the SEC to admit or deny the following:

> **RFA 7:**
> The SEC has not issued any written guidance stating that an insurance agent who is also associated with a registered investment advisor must disclose the amount of his or her commission on the sale of a fixed indexed annuity.

(D. 81-1).  The defendants' original and supplemental responses deny the request and provide qualifications.[1]

---

[1] The SEC's more recent supplemental response reads:

> Denied.  There is significant guidance regarding the obligations of a Registered Investment Adviser that directly applies to the allegations in the complaint.  As we explained in our meet and confer, we cannot point you to specific guidance that refutes RFA 7 as you have constructed it, but it is not appropriate or relevant for you to compel us to prove a negative when we have identified the relevant guidance.  That guidance

2

clearly establishes that a registered investment adviser owes a fiduciary duty to his advisory clients. You have argued that Mr. Cutter was acting in a different capacity – as an insurance agent – when he sold annuities to his investment advisory clients. We have alleged that he was not, in fact, acting in a different capacity. This is thus a factual dispute: did Mr. Cutter make it clear to his investment advisory clients that he was not acting as their advisor, but rather was acting as an insurance agent? We have been, and continue to, develop the factual record on this point. But the relevant legal principle is well established – if Mr. Cutter/CFG were acting as both advisers and insurance agents with respect to the same clients, their fiduciary duty required them to disclose all material facts about that relationship, and what capacity they were acting in, especially any conflicts of interest.

We further note that the Commission has provided clear guidance that an investment adviser, as part of their fiduciary duty to their client, has an obligation to be clear about the capacity in which they are acting. The scenario that most commonly arises is when an individual or firm is both an investment adviser and a broker-dealer. In such cases, the Commission has said:

> To meet its duty of loyalty, an adviser must make full and fair disclosure to its clients of all material facts relating to the advisory relationship. Material facts relating to the advisory relationship include the capacity in which the firm is acting with respect to the advice provided. This will be particularly relevant for firms or individuals that are dually registered as broker-dealers and investment advisers and who serve the same client in both an advisory and a brokerage capacity. Thus, such firms and individuals generally should provide full and fair disclosure about the circumstances in which they intend to act in their brokerage capacity and the circumstances in which they intend to act in their advisory capacity.

*Commission Interpretation Regarding Standard of Conduct for Investment Advisers*, Adv. Act Rel. No. 5248, 84 Fed. Reg. 33669, 33675-76 (July 12, 2019) (available here).

Furthermore, the staff issued a bulletin last year providing similar guidance:

> [T]he disclosure obligations of both Reg BI and the IA fiduciary standard require a firm or financial professional to disclose to the retail investor the capacity in which the firm or financial professional is acting (e.g., broker-dealer or investment adviser). The staff caveats that the disclosure of capacity may not be determinative if the facts and circumstances suggest the financial professional was acting in a different capacity from the one disclosed.

*Staff Bulletin: Standards of Conduct for Broker-Dealers and Investment Advisers Care Obligations*, Question 1.b. (Apr. 20, 2023) (available here).

(D. 81-1).

3

The amended complaint includes two claims. Germane to the RFA, the second claim alleges that CFG violated section 206(4) of the Investment Advisors Act, 15 U.S.C. § 80b-6(4), and its accompanying regulation, Title 17 of the Code of Federal Regulations, section 275.2006(4)-7 ("CFR 275.206(4)-7"), by "fail[ing] to adopt and implement *written policies* and procedures reasonably designed to prevent" the violations. (D. 15, ¶¶ 118-119) (emphasis added). Cutter allegedly aided and abetted CFG's violations. (D. 15, ¶ 121). To provide additional context, the presiding judge in denying a motion to dismiss (based on the factual allegations in the amended complaint) determined that the defendants were experienced investment advisers, who knew, yet failed to disclose to their clients who purchased fixed income annuities, that the defendants received up-front commissions of 7% to 8% of the annuity's total value from the insurance company. (D. 58, pp. 2, 4, 12). These undisclosed commissions contrasted with the 1.5% to 2% annual asset-based fee the defendants received of the total amount of assets managed. (D. 58, p. 4).

More, the presiding judge deemed the failure "to disclose to advisory clients" the higher incentive in recommending they invest in a fixed income annuity was a material omission. (D. 58, p. 9) ("As alleged, Cutter failed to disclose to advisory clients that his incentive to recommend that clients invest their assets in FIAs was significantly higher than his incentive to advise clients

4

to invest in other options, . . . Such omission is material."); (D. 58, p. 10) ("The material omission is not merely that Cutter obtained any commission for the sale of FIAs, but that the up-front commission rate Cutter earned from annuities was higher than the fee he earned when he advised clients to invest their funds in a money management account."). The presiding judge also determined that a section 206(1) violation "require[d] a determination that the adviser acted with scienter" whereas "'simple negligence' satisfies Section 206(20.") (D. 58, p. 11).

Against this backdrop, the defendants argue that the RFA seeks an *admission of fact* that is relevant to its defense that the SEC never issued guidance about disclosure of insurance commissions by an investment advisor who also sells insurance. (D. 81, 89). In a separate argument, the defendants characterize the SEC's original and supplemental responses as improper legal argument. (D. 81).

The SEC counters that RFA 7 includes an embedded *legal* argument asking it to admit that an insurance agent who is associated with an investment advisor must disclose the amount of his commission. (D. 84). The SEC further argues that it does not provide guidance to insurance agents selling insurance products outside the scope of their investment advisory role. It also points out, correctly, that it identified written guidance in the

5

supplemental response.[2]

### III. DISCUSSION

First, the court rejects the defendants' argument that the RFA seeks only an admission of fact. Regardless, an RFA may relate not just to the facts but also to the application of the law to the facts. Fed. R. Civ. P. 36(a)(1). Thus, "Requests for admissions seeking the application of law to the facts of the case are proper under Fed. R. Civ. P. 36." *Nautilus Ins. Co. v. Operation Stand Down, R.I.*, CA 09-192 ML, 2009 WL 10729080, at *3 (D.R.I. Dec. 11, 2009). Indeed, as indicated, the language of Rule 36(a)(1) allows a party to serve a request relating to "the application of law to fact." Fed. R. Civ. P. 36(a)(1).

Here, consistent with this language, the SEC aptly points out that the request includes an embedded legal argument. To explain, the RFA asks for written guidance from the regulatory agency (the SEC) that implicitly pertains to the legal issue of the scope of a duty on the part of an investment advisor who was also an insurance agent to inform clients about the higher commission. The presiding judge's discussion of both the defendants' motive for avoiding disclosure and, concomitantly, the issue of whether

---

[2] *See supra* note 1 (quoting *Staff Bulletin: Standards of Conduct for Broker-Dealers and Investment Advisers Care Obligations*, https://www.sec.gov/about/divisions-offices/division-trading-markets/broker-dealers/staff-bulletin-standards-conduct-broker-dealers-investment-advisers-care-obligations, p. 17 (Apr. 30, 2023)).

the defendants acted with scienter or negligence under sections 206(1) and (2), bolster this finding. (D. 58, pp. 12-13) ("As alleged, Defendants' motive for the omission is evident from the financial incentive Cutter had to sell annuities . . . Reading the complaint as a whole, the Court may plausibly infer that Defendants acted with the scienter required under § 206(1)."); (D. 58, p. 13) ("Because the negligence required by § 206(2) is a less demanding standard than scienter, the Court concludes that the SEC also has plausibly alleged the requisite *mens rea* under both §§ 206(1) and 206(2).").[3] Somewhat separately, to the extent the defendants criticize the SEC's responses as identifying only general guidance rather than specific guidance, RFA 7 asks about "written guidance," not "specific" guidance. The defendants' contention inaptly conflates the RFA regarding "written guidance" with specific guidance.

Second, the court rejects the defendants' assertion that the SEC's original and supplemental responses constitute improper legal argument. Even so, "[i]f the answering party believes that a request is based on an incorrect view of the facts or law, it can and *must* say so in its response." *AMAG Pharms., Inc. v. Am. Guar. and Liab. Ins. Co.*, Civil Action No. 21-CV-10618-LTS, 2022 WL 16950437, at *10 (D. Mass. Sept. 15, 2022) (emphasis added)

---

[3] To be clear, this courts finds, as opposed to the presiding judge, that her discussion above of motive, scienter, and negligence, are legal issues.

7

(citation omitted). The original response disagreed with the RFA's statement that the SEC had not issued any written guidance. (D. 81-1) (original response stating, "The Commission has provided a significant amount of guidance, in a variety of formats, regarding the Investment Advisers Act of 1940, including registration requirements for investment advisers."). In the more recent supplemental response, the SEC disagreed with the assumption in RFA 7 that Cutter was acting as an insurance agent. (D. 81-1) (SEC's supplemental response stating the defendants have argued that "Cutter was acting in a different capacity—as an insurance agent—when he sold [fixed income] annuities" whereas we, the SEC, have alleged that Cutter was not acting in a different capacity, which presumably means as an insurance agent.). Thus, even if the responses included legal argument, which is highly debatable, the SEC's qualification is appropriate. *See id.; see, e.g., U.S. ex rel. Dyer v. Raytheon Co.*, Civil Action No. 08-10341-DPW, 2013 WL 5348571, at *5 (D. Mass. Sept. 23, 2013) (appropriately qualifying answer to address assumption in RFA that defendant signed checks in individual capacity by responding defendant signed checks in official capacity) (citing *Harris v. Oil Reclaiming Co., Ltd.*, 190 F.R.D. 674, 676-77 (D. Kan. 1999)).

Per the foregoing, the SEC's responses complied with Rule 36(a). They do not, as the defendants seek, necessitate a further response or a finding deeming the request to be admitted.

**IV.  CONCLUSION**

For the foregoing reasons, the defendants' motion to compel the plaintiff to answer RFA 7 or, in the alternative, to deem it admitted (D. 80) is **DENIED**.

s/s Donald L. Cabell
DONALD L. CABELL, Ch. U.S.M.J.

DATED:  March 12, 2025