UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | ) ) ) |
| Plaintiff, | ) ) ) Case No. 1:23-cv-10589- DJC |
| v. | ) ) *Leave to File Granted on July 1, 2025* |
| CUTTER FINANCIAL GROUP, LLC AND JEFFREY CUTTER, | ) *(ECF No. 192)* ) ) |
| Defendants. | ) ) |

**REPLY IN SUPPORT OF DEFENDANTS' RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW ON ADVISERS ACT SECTION 206(2) CLAIM OR, IN THE ALTERNATIVE, FOR A NEW TRIAL ON THAT CLAIM**

Contrary to the SEC's opposition, Defendants do not "misapprehend the nature and scope" of the SEC's case. At trial, the SEC itself explicitly disavowed the duty of care elements of the so-called "scheme" that it had alleged in their Amended Complaint; namely, that Defendants' recommendations were not appropriate for their clients and that clients were supposedly harmed by those recommendations. The SEC must live with that choice. And the Court must evaluate Defendants' Rules 50 and 59 motion ("Motion") through the lens of the case the SEC actually tried: a case about conflict-of-interest disclosures.

**I.    Defendants' Motion for Judgment as a Matter of Law Must Be Evaluated Based on the Case the SEC Actually Presented at Trial: that Defendants Failed to Adequately Disclose their Conflicts of Interest**

In opposing Defendant's Motion, the SEC attempts to disclaim the reality that "this case is entirely and specifically focused only on disclosures" of conflicts of interest. (Dkt. 189, SEC Opp. at 4.) Instead, the SEC bases its opposition almost entirely on the idea that the Commission

alleged a "broader" "scheme." (*Id.*) To that end, it repeats allegations from its Amended Complaint about the components of this alleged "scheme."

For example, the SEC argues in its opposition that, as part of the alleged "scheme," Cutter "provided advice and engaged in a pattern of business practices designed to maximize the money and services flowing to him and CFG." (*Id.* at 5.) And, according to the SEC, the evidence of this aspect of the alleged scheme at trial was that Cutter's "standard advice was to liquidate [clients'] assets … and put two-thirds in managed accounts and one-third in an annuity or annuities." (*Id.* at 5-6.) Similarly, the SEC argues that "Defendants' *sale of annuity products to their advisory clients* and their misrepresentations to third-party insurance companies to effectuate those sales were actions taken in furtherance of the scheme …." (*Id.* at 5 (emphasis added).) The only fair reading of those arguments is that, according to the SEC, that "standard advice" and "sale of annuity products" was not in the best interests of Defendants' clients.

But at trial, the SEC told the jury that Defendants' recommendations were *not* at issue. During its closing argument, the SEC told the jury that "this case is not about whether annuities are good or bad. That's not at issue here" (4/22/2025 Tr. at 6-270:8-9) and "[n]obody is saying that the Cutters' clients lost money. None of that is what this case is about." (*Id.* at 6-270:18-20.) These statements to the jury were consistent with what the SEC told the Court before trial: "the Commission is proceeding in this case under a theory that Defendants breached their duty of loyalty, not their duty of care." (SEC's Trial Br., Dkt. 138 at 2.)

Whatever the SEC may have alleged in the Amended Complaint, it chose not to try its claims about the suitability of Defendants' advice and whether clients were harmed by that advice. The SEC acknowledges as much in its opposition, admitting that "financial harm [is] not an element of the alleged violations" and the SEC "accurately previewed that it would not be

2

arguing that particular products were 'unsuitable' for particular clients." (SEC Opp., Dkt 189 at 11.) Having disavowed those aspects of their case, what's left is a case about conflict-of-interest disclosures. Indeed, before trial, the SEC told the Court that "the disclosures Defendants … made to their clients at the point of sale or in other communication [is] the central issue in this case." (SEC Mot. in Limine to Exclude Rel. Evid., Dkt. 102 at 14.) Thus, the SEC cannot credibly argue that Defendants "misapprehend the nature and scope" of the SEC's case as one about conflict-of-interest disclosures. (SEC Opp., Dkt. 189 at 4.) The SEC must live with the case it tried.

Properly viewing this case as one about conflict-of-interest disclosures, the SEC's opposition falls short. For example, the SEC does not meaningfully respond to Defendants' point that, based on the evidence presented at trial, the FIA compensation amounts that Defendants earned are not material as a matter of law. (*See* Def. Mem., Dkt. 184 at 12-14.) Specifically, the SEC does not address Defendants' arguments that:

- Mr. Cutter had no incentive to recommend FIAs over managed accounts and would have earned higher compensation from advisory fees by placing client funds in managed accounts than he would have earned in commissions from placing those same funds in FIAs. (*Id.* at 13.) The SEC expert criticized this conclusion but presented no evaluation of her own at trial. (*Id.*)

- Only 54% of Mr. Cutter's clients actually had FIAs from which he earned commissions. (*Id.*) And Mr. Cutter replaced only 13% of his clients' annuities—far below the industry average of 30-50%. (*Id.* at 14.)

- Mr. Cutter received no more than industry standard compensation from insurance companies for the sale of FIAs. (*Id.*) The SEC does not address the well-established caselaw that industry standard compensation "can hardly be the basis on which an allegation of fraud is predicated." *Acito v. IMCERA Group, Inc.*, 47 F.3d 47, 54 (2d Cir. 1995) (internal citation and quotation omitted). (Def. Mem., Dkt. 184 at 14.)

In addition, the SEC urges the Court to wholesale dismiss Defendants' legal arguments that the SEC's claims concerning FIA compensation disclosure are barred by the McCarran-

3

Ferguson Act and that the SEC failed to provide Defendants with fair notice of its novel regulatory interpretation, because the Court rejected those arguments in ruling on Defendants' motion to dismiss the Amended Complaint. (SEC Opp., Dkt. 189 at 9-11.) But the Court's ruling on the motion to dismiss was made in the context of a much broader "scheme" alleged in the Amended Complaint. The case the SEC presented to the jury—conflict-of-interest disclosures—changes the analysis. For example, in its order on the motion to dismiss, the Court ruled that "[t]he Advisers Act protects advisory clients from bad investment advice rather than [insurance] policyholders from illegal policy provisions or unfair marketing by insurance agents." (Mem. & Order, Dkt. 58 at 20.) But the SEC did not present the type of case credited by the Court when it made that ruling (namely, that Defendants' recommendations regarding allocations of assets between FIAs and securities were not in the best interests of their clients). Instead, the SEC presented a case about the disclosure of *insurance* compensation, a case that is barred by the McCarran-Ferguson Act. In short: the Court can, and should, evaluate legal issues based on the much narrower case presented to the jury.

## II. The SEC's Opposition to Defendants' Alternative Motion for a New Trial Fails to Address the Examples of Testimony It Elicited At Trial that Defendants Were Not Permitted to Rebut

Even though the SEC (i) told the Court that it "agreed not to introduce evidence of what someone may have lost in surrendering their annuity" (Def. Mem., Dkt. 184, Exhibit 1, Final Pre-Trial Conf. Tr. at 40:19-25); (ii) bindingly admitted in responses to requests for admission that it "has not alleged that any of the insurance products sold by Mr. Cutter were unsuitable" for his clients (Dkt. No. 117-02, at RFA Nos. 16-35); and (iii) told the jury during its closing argument that this case was not about whether FIAs were good or bad for Defendants' clients or whether Defendants' clients lost money, the SEC still elicited testimony concerning both the suitability of Defendants' recommendations and alleged harm clients suffered as a result of those

4

recommendations. Specific examples of that testimony are laid out in Defendants' Motion. (Dkt. 184 at 26-28.) The SEC does not acknowledge or address that testimony. Instead, it hangs its opposition entirely on the fact that Defendants' arguments that it should have been permitted to present contrary evidence, including expert testimony, that Mr. Cutter's recommendations were suitable and his clients did not suffer harm "mirror the *arguments they made prior to trial and the Court rejected.*" (SEC Opp., Dkt. 189 at 12 (emphasis added).).

As the SEC correctly notes, the Court made those rulings *before* trial—when the SEC promised the Court and Defendants that it would not present evidence as to harm and that it took no position on the suitability of Defendants' recommendations. But that is not what happened *at trial*. At trial, the SEC introduced evidence about, among other things, surrender charges and taxes clients incurred (harm) and whether clients felt that Mr. Cutter's recommendations were in their best interests (suitability). (*See* Def. Mem., Dkt. 184 at 26-28.) Defendants should have been allowed to present their own evidence that their clients suffered no harm and that Defendants' recommendations were suitable for them. Because Defendants were precluded from offering that evidence, and for the other reasons described in their memorandum of law, Defendants should be granted a new trial on the Advisers Act Section 206(2) claim.

Dated: July 1, 2025                                     Respectfully submitted,

                                                           /s/ *Ian D. Roffman*
Ian D. Roffman (BBO# 637564)
*iroffman@nutter.com*
Mark C. Jensen (BBO# 646662)
*mjensen@nutter.com*
Melanie V. Woodward (BBO# 690906)
*mwoodward@nutter.com*
Natalia E. Peña (Bar. No. 707596)
*nepena@nutter.com*
Nutter McClennen & Fish LLP
Seaport West
155 Seaport Blvd.
Boston, MA 02210-2604
(617) 439-2421 (Roffman)

*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

     I certify that, on July 1, 2025, this document (filed through the ECF system) will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants.

                                                            /s/ *Ian D. Roffman*

7318374